UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WYNDHAM VACATION RESORTS, INC.,
and WYNDHAM RESORT DEVELOPMENT
CORPORATION,

     Plaintiffs,

v.                           CASE NO.:  6:21-cv-02106-CEM-DCI

WESLEY FINANCIAL GROUP, LLC; WESLEY
CREDIT REPAIR, LLC; and CHARLES WILLIAM
MCDOWELL, III a/k/a CHUCK MCDOWELL,

     Defendants.

_____/

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Wesley Financial Group, LLC ("WFG"), Wesley Credit Repair, LLC ("WCR") and Charles McDowell, III ("McDowell," and collectively, the "Wesley Parties") move to dismiss the Complaint, Dkt. 1, of Plaintiffs Wyndham Vacation Resorts, Inc. ("WVR") and Wyndham Resort Development Corporation ("WRD," and collectively, "Wyndham").[1]

## **INTRODUCTION**

This is Wyndham's ███ bite at the apple, having sued McDowell and/or WFG in ███ prior lawsuits, none of which were disclosed in accordance with Local Rule 1.07(c). These prior lawsuits, ██████████████████████ and the unambiguous terms of WFG's customer contract attached to the Complaint, squarely defeat all of Wyndham's claims.

The timeshare exit business is a thriving industry made possible by timeshare companies' deceptive, high-pressure sales techniques that bind owners, and many times their heirs, with exorbitant fees and unfulfilled promises. McDowell is a former Wyndham employee who built a successful business by helping customers who have otherwise made decisions to "terminate," "exit" or "cancel" their timeshares.

Sifting through the series of sensational allegations, Wyndham's principal allegation is that it is deceptive for WFG to advertise that it can assist customers because the timeshare owners could achieve foreclosure or termination on their own, for free. Dkt. 1, ¶¶ 159–60. That is nonsense given that the same could be said for

---

[1] Out of an abundance of caution, this motion is filed with redactions and without attaching Exhibits A-C and F pending resolution of the parties' joint motion requesting leave to file under seal. Dkt. 22.

virtually any consumer service customers elect to pay for instead of performing on their own, *i.e.*, painting a house, washing a car or driving to a restaurant. As demonstrated by WFG's success and the hundreds of positive reviews on independent sites such as Trustpilot, WFG's customers clearly see value in its services. But as demonstrated by Wyndham's publication of McDowell's address and intentionally serving him with the Complaint on Christmas Eve while at home with his family, Dkt. 8, at 2, this is a personal vendetta. According to industry insiders, the timeshare industry has committed $1 million per month to put WFG out of business.

The litigation before this Court is merely the latest salvo in a long campaign by Wyndham to prevent WFG from lawfully assisting timeshare owners. Wyndham's previous lawsuits ended in ████████████████████████████████ dismissal of Wyndham's claims against McDowell and WFG with prejudice, ██████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ As such, Wyndham's claims are barred by the established legal doctrines of ████████ res judicata and collateral estoppel.

WFG is a reputable company whose business practices are fully disclosed, in writing, in every customer contract. Wyndham cites to this contract, but its conclusory averments ignore the clear, unambiguous disclosures in it, including that a timeshare "termination" can involve foreclosure and damage to a customer's credit. The written disclosures WFG makes to customers squarely contradict Wyndham's allegations that WFG "conceals" the nature of its termination services. Likewise, Wyndham's

Complaint misstates and otherwise generalizes WFG's advertisements, which do not say what Wyndham alleges in summary fashion.  Put simply, the claims asserted against the Wesley Parties should be dismissed based on the text of the advertisements and documents referenced in Wyndham's Complaint.

### FACTUAL BACKGROUND

**A.    The Parties**

McDowell founded WFG with the mission of assisting owners seeking to end the never-ending financial burden imposed by their timeshare arrangements. WFG promotes the business with nationwide advertising through the internet, radio, television commercials and social media. Dkt. 1, ¶ 52. WFG uses a rigorous qualification process and declines thousands of potential customers each year. *See* https://wesleyfinancialgroup.com/about-us/. For those it accepts, WFG offers a simple guarantee: if it cannot successfully assist the customer in terminating his or her timeshare within a specified time, the customer receives a full refund.  Dkt. 1-4, § 4. Because terminating a timeshare may lead to negative marks on a customer's credit report, WFG's "sister company," WCR, assists customers in attempting to remove any negative marks.  *See* Dkt. 1, ¶¶ 3, 91.

Wyndham touts itself as being the world's largest vacation timeshare company. Wyndham obtains (or retains) its customers through high-pressure sales presentations that include misrepresentations or omissions about increasing fees, booking options and false buy-back guarantees.  When Wyndham's owners want out, Wyndham employs bait-and-switch tactics to keep the owners bound in perpetuity.  Faced with

3

no other option but a lifetime of increasing fees and an unmarketable timeshare interest, many owners turn to timeshare exit companies such as WFG to assist them. And, to be sure, there is nothing tortious, illegal or wrongful about WFG's assistance. A customer has every right to cease making payments to a creditor such as Wyndham incident to a contractual obligation. And sometimes that is exactly what happens. However, that does not create a right of recovery against WFG or its founder.

**B.     Wyndham's Unsuccessful Litigation History with McDowell and WFG**

In 2011, WVR brought             suit in Tennessee state court against McDowell and others,

*See* Ex. D;            And in 2012, WVR filed a third lawsuit against McDowell and WFG in the Middle District of Tennessee, again asserting that WFG's business constituted tortious interference, unauthorized practice of law, unfair competition and violations of Tennessee's Consumer Protection Act. *See Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC*, No. 3:12-cv-559 (M.D. Tenn. Oct. 12, 2012) (the "559 Case"), Dkts. 1, 33 (Exs. E-1, E-2) (            the 2011

Tennessee state court case, and the 559 Case collectively, the "Prior Litigation"). █

**C.    The Complaint's Deficient and Conclusory Allegations**

---

The Complaint includes the following causes of action: false advertising in violation of the Lanham Act (Count I) and tortious interference with contracts and advantageous business relationships (Count II) against WFG and McDowell; conspiracy to interfere with contracts and advantageous business relationships against WFG and WCR (Count III); and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") against the Wesley Parties (Count IV). Wyndham generally alleges that WFG's entire business model or "process" is a sham. Dkt. 1, ¶¶ 3, 7, 43, 86. At its core, the crux of this claim is that WFG does not disclose that its process may lead to default or foreclosure for WFG's customers. *Id.*, ¶¶ 86, 96, 142. That is wrong. And, it ignores the plain terms of the Service Agreement Wyndham chose to attach to its Complaint.[3] Before customers pay anything to WFG, they review and sign the Service Agreement, which is the contract that governs the relationship and details the services WFG will perform. Dkt. 1, ¶ 105. Section 4 of Service Agreement lays out WFG's guarantee to the customer: if the customer's timeshare contract "is not Terminated as of the End Date, then, upon receipt of written notice . . . WFG agrees to refund one hundred percent (100%) of the Fee to" the customer. Dkt. 1-4, § 4. Importantly, the Service Agreement defines "Termination" of the customer's timeshare contract or "Purchase Agreement" as:

> (i) terminating Your ownership in and to the applicable timeshare, (ii) terminating the Purchase Agreement, **extinguishing Your debt under the Purchase Agreement through any means and/or methods (including, but not**

---

[3] "It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (internal citations omitted).

**limited to Your receipt of an offer of a Deed in Lieu of Foreclosure)**, (iii) Your acceptance and agreeing to an adjustment, amendment or change to Your Purchase Agreement or (iv) **foreclosure**.

*Id.* (emphases added).[4]

WFG's customers also make several important warranties in the Service Agreement. Relevant here, those warranties include: (a) all information provided to WFG is true and accurate and does "not contain any false information created by WFG"; (b) WFG did not cause or ask the customer to alter the facts or circumstances that caused the customer to purchase a timeshare; (c) WFG did not give instructions that induced or caused the customer to believe he or she had grounds to terminate the timeshare contract; and (d) WFG does not guarantee that the timeshare will be terminated or that the customer will receive a refund from the timeshare company. *Id.*, § 8(ii)–(iv), (x). The Service Agreement and disclaimers on WFG's website also make clear that WFG is not a law firm and that any information WFG provides to its customers is not a substitute for legal or professional advice. *Id.*, § 13; *see* https://wesleyfinancialgroup.com/timeshare-blog/timeshare-laws-need-to-change/.

Ignoring these disclosures, Wyndham alleges that WFG's advertisements and business are deceptive. After disregarding the Complaint's conclusory allegations, legal conclusions and character assassination of McDowell, Wyndham's allegations related to WFG's "false" advertisements can be distilled down to the following:

---

[4] WFG's website also informs viewers that ceasing payments on their timeshares may result in a foreclosure and lower credit scores. *See* https://wesleyfinancialgroup.com/ (answering frequently asked questions). The Court can properly consider statements made on WFG's website because the website is relied upon and central to the Complaint. *See BPI Sports, LLC v. ThermoLife Int'l*, 2020 WL 10180910, at *2 (S.D. Fla. Jan. 9, 2020).

- WFG advertises that it has a unique "process" to assist timeshare owners from getting out of the burdens of their timeshare contracts, Dkt. 1, ¶¶ 3, 43, 77, 86, 96–97;

- WFG purportedly touts a "100% success rate" and guarantees it will cancel the timeshare owner's contract, *id.*, ¶¶ 58, 62–64, 85, 99;

- WFG "promise[s] legal results such as 'Cancel Your Timeshare Legally' and 'We Can Legally CANCEL Your Contract,'" *id.*, ¶¶ 60, 101–102; and

- WFG informs customers they can cease making payments toward their timeshare after retaining WFG's services, without risk or consequence. *Id.*, ¶¶ 66–68, 77–78, 87–88, 96, 98, 100.[5]

Wyndham also complains about WFG's cancellation process. Among these allegations are: WFG instructs customers not to reveal its involvement to Wyndham; WFG's employees draft correspondence for the customers to send to Wyndham; WFG's employees impersonate Wyndham owners when calling Wyndham on their behalf; and WFG's employees access the customers' online Wyndham accounts — of course, only *after* the customer provides the login credentials. *Id.*, ¶¶ 106–08, 118–30, 133, 139–41. Notably, Wyndham does not assert that any of these alleged actions are harmful or deceptive to (or not authorized by) the actual consumers.

As in the Prior Litigation, Wyndham's Complaint asserts that the above-described actions interfere with its contracts and business relationships and further violate state and federal law. For the reasons that follow, the Complaint should be

---

[5] While Wyndham claims that WFG "gives a 100% guarantee that all negative credit marks will be removed from the timeshare owner's credit," Dkt. 1, ¶ 87, it provides no advertisements supporting this allegation or the context in which this alleged guarantee is made. *See Dyson, Inc. v. Garry Vacuum, LLC*, 2011 WL 13268002, at *13 (C.D. Cal. Jan. 4, 2011) (finding the claimant's failure to attach advertisements or characterize their context did not satisfy Rule 8 and prevented the court from "examining the full context in which the allegedly false statements were made").

dismissed in its entirety.

## **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the court must accept well-pleaded facts as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Further, the court may consider an extrinsic document on a motion to dismiss if the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). And "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.")) (other citations omitted).

## **ARGUMENT**



9



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

## II.     THE DOCTRINE OF RES JUDICATA BARS WYNDHAM'S ENTIRE CASE.

████████████████  Wyndham's Complaint is barred by the doctrine of res judicata.  "Res judicata stands for the idea that once an issue has been decided for particular litigants, it should not be undone by a later lawsuit.  This doctrine lets parties

rest assured that they need not relitigate issues in the future: they can live without a cloud of uncertain future litigation perpetually hovering." BRYAN A. GARNER ET AL., THE LAW OF JUDICIAL PRECEDENT 377 (2016). But that is precisely what Wyndham seeks to do in this action: unwind ███████████████████ the dismissal of the Prior Litigation with prejudice. The Wesley Parties are entitled to rely on those final judgments, each rejecting Wyndham's theory that the Wesley Parties' business practices amount to unfair competition, violation of consumer protection law and tortious interference. Indeed, the Wesley Parties built their business operations with those decisions in mind, assured in the years following that the threat of Wyndham asserting the same claims again was not "perpetually hovering." *Id.* After numerous bites at the apple, Wyndham has at last reached the core, and this Court should dismiss the Complaint as barred by res judicata.

Federal courts "must give a state-court determination the same preclusive effect as it would command in the tribunals of the state where the determination was made." *Harris v. R.J. Reynolds Tobacco Co.*, 981 F.3d 880, 885 (11th Cir. 2020). "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008). Because all of the Prior Litigation arose from (1) a Tennessee state court or (2) a federal court sitting in Tennessee exercising diversity jurisdiction, Tennessee law of res judicata applies in this action. "Res judicata comes in two forms:" claim preclusion and issue preclusion. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).

## A. Claim Preclusion Bars Wyndham's Complaint.

Claim preclusion "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012).  It applies where it is shown "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Id.*  All factors are met here.

First, a court of competent jurisdiction rendered a final judgment.  ██████████ ██████████████████████████████████████████████████████ [8]  In the 559 Case, the court entered an order dismissing all claims with prejudice. Ex. G.  Such an order dismissing all claims with prejudice operates as a final judgment for purposes of claim preclusion.  *See Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006).

Second, claim preclusion "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, *or could have been*, litigated in the former suit." *Rainbow Ridge Resort, LLC v. Branch Banking & Tr. Co.*, 525 S.W.3d 252, 263-64 (Tenn. Ct. App. 2016) (emphasis added).  ████████████ Wyndham either did bring or could have brought all of the claims in this action in the Prior Litigation.

Third, the parties in the Prior Litigation or their privies are the same as the

---

[8] This Court may properly consider proceedings from a prior court action when analyzing a motion to dismiss on res judicata grounds.  *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); *Ladd v. City of W. Palm Beach*, 681 F. App'x 814, 816 n.2 (11th Cir. 2017).

parties in this action. Under Tennessee law, "different parties are in privity if they stand in the same relationship to the subject matter of the litigation." *Johnson v. Gen. Motors Corp.*, 574 S.W.3d 347, 353 (Tenn. Ct. App. 2018) (citation omitted). WVR, WFG and McDowell were all named parties in the Prior Litigation. Exs. ▋, E. Perhaps in recognition of the preclusive effect of the Prior Litigation, Wyndham has tacked on additional parties in this action, naming WRD as a plaintiff.[9] Wyndham's gambit is unavailing, however. Both WRD and WVR are subsidiaries of WVO. *See* Dkt. 11. Further, WRD and WVR share a common principal place of business and engage in the identically-described sale of timeshares. Dkt. 1, ¶¶ 22–24. In fact, the Complaint does not delineate any unique actions taken by, or harm that has befallen, WRD and WVR. ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ Dkt. 11. Based on their close corporate relationship, similar parent company and virtually identical business interests, WRD and WVR assuredly share the same relationship with respect to the subject matter of the Prior Litigation and this action. Because all elements of claim preclusion apply, Wyndham's Complaint is barred and should be dismissed.

## B. Issue Preclusion Bars Wyndham's Complaint.

For similar reasons, issue preclusion bars Wyndham's Complaint. Issue preclusion applies where it is shown:

(1) that the issue to be precluded is identical to an issue decided in an earlier

---

[9] It is of no moment that WCR was not a party to the Prior Litigation. Wyndham pleads that WFG and WCR are sister companies with close mutuality of interest, *see* Dkt. 1, ¶¶ 3, 13-14, 25, 92, thus, it would be farcical for Wyndham to suggest that WFG and WCR are not in privity.

proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*In re Justice*, 628 S.W.3d 279 (Tenn. 2021) (citing *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)). ███████████████ the identical issues permeating this case — whether the Wesley Parties' business practices amount to unfair competition, violation of consumer protection law and tortious interference — were actually raised, litigated, and decided in the Prior Litigation.  And the parties to this litigation or their privies had the opportunity to fully address and litigate those issues in the Prior Litigation.  Consequently, this Court should dismiss the Complaint as barred by issue preclusion.

## III.  THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

### A.  Wyndham's Claim for Interference (Count II) Should be Dismissed Because WFG did not Induce any Breach of Contract.

Although the Wesley Parties vehemently disagree with the allegations included in the Complaint, even as pleaded, Wyndham fails to state a claim for tortious interference with contract or advantageous business relationships.  Fundamental to a claim of tortious interference is that a defendant must *induce* a contracting party to breach a contract or relationship.  *See Farah v. Canada*, 740 So. 2d 560, 561–62 (Fla. Dist. Ct. App. 1999).  By the very terms of the Complaint's exhibits, neither WFG nor McDowell induced their customers to breach their timeshare agreements.  According to the Service Agreement, WFG's customers warrant and represent that WFG did not

"engage in any activities or offer [them] any instructions that induced, facilitated or caused [them] to believe, claim or otherwise determine that [they] had grounds to Terminate or otherwise restructure [their timeshare agreements]."  Dkt. 1-4, § 8(iv).  WFG's customers are not individuals who are otherwise enjoying and wish to continue their timeshare ownership.  Rather, they are individuals who have come to loathe their timeshares and want to escape the arrangement before they ever contact WFG.  Because neither WFG nor McDowell induced their customers to breach any contract, Wyndham's claim for tortious interference with contract must be dismissed.

### B. Wyndham's Claim for Conspiracy (Count III) Should be Dismissed Because WFG and WCR Cannot Form a Conspiracy.

Wyndham's claim for conspiracy against WFG and WCR should be dismissed for two fundamental reasons.  Sister companies such as WFG and WCR cannot form a conspiracy.  *See Watershed Treatment Programs, Inc. v. United Healthcare Ins.*, 2007 WL 1099124, at *6 (S.D. Fla. Apr. 10, 2007).  Because Wyndham pleads that WFG and WCR are sister companies, Dkt. 1, ¶¶ 3, 13–14, 25, 92, it fails to state a claim for conspiracy against those entities.  Moreover, because Wyndham predicates its conspiracy theory on alleged tortious interference with contracts and advantageous business relationships, its claim for conspiracy must be dismissed for the same reasons as its interference claims.  *See Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. Dist. Ct. App. 2020).

### C. WFG's Advertisements are Not False, Misleading or Actionable Under the Lanham Act (Count I).

Wyndham claims that WFG's and McDowell's advertisements violate the

Lanham Act because they are literally false or misleading to consumers.  Dkt. 1, ¶¶ 186–203.  Wyndham is wrong. When read in full context, WFG's advertisements are not deceptive.  They are either true or, at most, non-actionable opinions and puffery. Moreover, many of the allegedly "misleading" advertisements Wyndham cites are expressly addressed and expanded upon in the Service Agreement Wyndham attached to the Complaint. Thus, to the extent any prospective customers are unclear what WFG's services entail before retaining WFG, the Service Agreement removes all doubt *before* the customers make any purchasing decisions.

To state a viable false advertising claim under the Lanham Act, the plaintiff must allege: (1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (quoting *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012)). In this context, "false or misleading" means "the statements at issue were either (1) commercial claims that are literally false as a factual matter, or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or are likely to deceive consumers." *Id.* (citations and internal quotations omitted).

As a threshold matter, most of the advertising cited in the Complaint is true. Using a series of sensational adjectives, Wyndham drives a narrative that it is "false

and deceptive" for WFG to advertise that a timeshare or mortgage debt can be "cancelled" or that customers will no longer have to make payments on their timeshare. Dkt. 1, *e.g.*, ¶¶ 3–7, 43–48, 54–68, 96–99. More than 40 paragraphs of the Complaint reference that WFG falsely claims to "cancel" timeshares. Webster defines "cancellation" as "a decision to stop doing or planning to do something" or "the act of causing something to end." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/cancellation. That is exactly what occurs when a timeshare company forecloses, accepts a deed-in-lieu or otherwise voluntarily releases an owner from its contractual obligations — all of which WFG discloses as options in the Service Agreement. Dkt. 1-4, § 4.

Wyndham's claim that the use of "cancellation" and "eliminate" are misleading suffers the same fatal flaw. Wyndham dubs these terms misleading because WFG allegedly intends to achieve these results by instructing customers to cease payments on their timeshare contracts. Dkt. 1, ¶¶ 190–91. Even if Wyndham alleged non-payment is the only way to obtain cancellation (it does not), Wyndham ignores that WFG expressly informs its customers of the possibility of a foreclosure to terminate their timeshare interest. Dkt. 1-4, § 4. Indeed, a screenshot from WFG's website embedded in the Complaint states: "Our Service Agreement with each client sets forth with specificity the types of termination that satisfy this guarantee." Dkt. 1, ¶ 63. And, the Service Agreement discloses that "termination" can include "Deeds in Lieu of Foreclosure" or "foreclosure." Dkt. 1-4, § 4. Because Wyndham's conclusory allegations conflict with the Service Agreement referenced on the website and attached

19

to the Complaint, the Service Agreement governs. *Crenshaw*, 556 F.3d at 1292. WFG's advertisements are therefore not misleading or deceptive, and they cannot have a material impact on consumers' purchasing decisions. *C.f. BMW of N. Am. v. Au-tomotive Gold, Inc.*, 1996 WL 1609124, at \*7 (M.D. Fla. June 19, 1996) (finding in unfair competition claim under Section 43(a)(1)(A) of the Lanham Act that the defendant's use of a "clear and concise disclaimer" was "sufficient to remedy any confusion").

To determine whether an advertisement is false or misleading, courts "must analyze the message conveyed in full context," and "must view the face of the statement in its entirety." *Hi-Tech Pharms.*, 910 F.3d at 1196 (quoting *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)). Wyndham takes the following statements out of context to claim they are false or misleading: WFG and McDowell (a) claim to have a "100% success rate"; (b) use the phrase "guaranteed cancellation" on WFG's website; (c) "assure success for every case [they] accept"; and (d) claim "there has never been a case that [WFG] has lost." Dkt. 1, ¶189. None of these statements are actionable.

Notably, the Complaint does not attach or cite to any advertisements to support Wyndham's "100% success rate" allegation. Indeed, the advertisements incorporated into the Complaint state the exact opposite: WFG guarantees it will obtain cancellation and, if it is unsuccessful, the customer will receive a full refund. *Id.*, ¶ 63. This is consistent with WFG's website and the Service Agreement. Dkt. 1-4, § 4; https://wesleyfinancialgroup.com/our-guarantee. Wyndham "cannot state a claim under the Lanham Act by attributing inferences to an otherwise clear advertisement."

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 366 (S.D. Fla. 1996), *aff'd*, 136 F.3d 139 (11th Cir. 1998) (table).  Tellingly, Wyndham does not allege that WFG fails to honor its money back guarantee — in fact, Wyndham concedes that WFG has issued the advertised refunds.  Dkt. 1, ¶ 189.  And when properly read in conjunction with the money back guarantee, it is clear that the statements "assur[ing] success for every case" and that WFG has never "lost" a "case" are simply puffery and boasting. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000) (defining "puffery" in part as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying").

The statements indicating that WFG can "legally" cancel its customers' timeshare contracts are likewise non-actionable. "As a general rule, statements that a product or service is 'legal' are inactionable statements of opinion because the statements 'purport to interpret the meaning of a statute or regulation.'" *Philips N. Am., LLC v. Summit Imaging Inc.*, 2020 WL 1515624, at *6 (D. Wash. March 30, 2020) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins.*, 173 F.3d 725, 731 (9th Cir. 1999)). Further, statements of "laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact, unless 'a court or agency of competent jurisdiction' has clearly and unambiguously ruled on the matter." *Ameritox, Ltd. v. Millennium Labs., Inc.*, 2014 WL 1456347, at *5 (M.D. Fla. April 14, 2014) (citations omitted).  Accordingly, any statements WFG or McDowell makes regarding the "legality" of WFG's services are inactionable opinions that cannot support a Lanham Act claim. *Philips*, 2020 WL 1515624, at *6 ("Until the court

21

and the trier of fact adjudicate this case and determine whether Defendants' actions are unlawful, however, statements about the legality of Defendants' actions are inactionable statements of opinion for purposes of the Lanham Act.").

### D.    Wyndham's FDUTPA Claim Fails because Tennessee Law Applies to Count IV.

When Florida law does not apply, a plaintiff cannot bring suit under the FDUTPA. *ADT LLC v. Vision Sec., LLC*, 2014 WL 3764152, at \*6–7 (S.D. Fla. July 30, 2014).  Here, Tennessee law applies to this claim because Tennessee has the "most significant relationship to the occurrence and the parties[.]" *Id.* at \*6 (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Accordingly, Wyndham cannot maintain its FDUTPA claim.

To determine which state has the most significant relationship, Florida courts consider the following factors from the Restatement (Second) of Conflict of Laws ("Restatement") § 145: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." *Id.* (quoting *Bishop*, 389 So. 2d at 1001). In cases involving "unfair competition" claims, "the court should 'give particular weight' to the place where the conduct causing the injury occurred." *Id.* (quoting Restatement § 145, cmt. f). This factor receives greater weight "than the place of injury because economic injury for unfair competition will usually occur in more than one state." *Id.*; *see also Grupo Televisa, S.A. v. Telemundo Commc'ns Grp.*, 485 F.3d

1233, 1241 (11th Cir. 2007) (describing the location of the defendants' alleged conduct as "the single most important contact").

Though Wyndham contends that some of the Wesley Parties' actions were directed at Florida residents, the alleged tortious conduct took place at the Wesley Parties' offices in Tennessee. Dkt. 1, *e.g.*, ¶¶ 25, 27, 44–51, 70–95, 104–30; *see Grupo Televisa*, 485 F.3d at 1241 (noting the defendants "generated most of the written communications" at issue "from their home offices in Florida" when holding that Florida law applied). Second, each of the Wesley Parties are residents of Tennessee.[10] Third, any alleged injury Wyndham sustained occurred not only in Florida, where Wyndham is headquartered, but also in Delaware and Oregon, where WVR and WRD are incorporated. Dkt. 1, ¶¶ 22–23. Relatedly, any alleged injury to consumers, and to Wyndham from losing customers, occurred across the country. *See ADT*, 2014 WL 3764152, at \*7 ("[T]he injury also occurred where ADT alleged it lost customers, such as Texas, California, and Virginia."); *see also* Dkt. 1, ¶¶ 30, 32, 56, 194 (acknowledging that WFG has a "national and pronounced significant social media presence" and that Wyndham has customers from multiple states, but only alleging that "some" of them "are Florida residents"). Finally, there is no "center" of the parties' relationship that weighs in favor of applying Florida law, or that of any other state, over Tennessee law. Since "Florida law does not apply, [Wyndham] lacks

---

[10] Although Wyndham alleges "upon information and belief" that McDowell is a Florida resident, he is domiciled in and a citizen of Tennessee. Indeed, Wyndham served McDowell at his home in Franklin, Tennessee. Dkt. 8, at 2.

standing to bring a suit under the FDUTPA." *ADT*, 2014 WL 3764152, at *7.

Even if Florida law applies, Wyndham's FDUTPA claim still fails. Under the FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008) (quoting *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007)). Wyndham offers the following as examples of "deceptive" conduct: (i) WFG imposes confidentiality obligations on its customers and directs them not to reveal their involvement with WFG to Wyndham; (ii) WFG employees "impersonat[e]" customers when communicating with Wyndham; and (iii) WFG accesses its customers' online Wyndham accounts. Dkt. 1, ¶¶ 242(c), (j), (l)–(n). Wyndham, however, fails to allege how any of these actions are deceptive to, injure or are not authorized by the actual consumers. *See Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 212 ("While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove . . . an injury to a consumer.").

Wyndham's remaining theories fare no better. Though Wyndham generally alleges "[t]he process by which [WFG] utilizes its qualification specialists and Vice Presidents to sell its service" is "deceptive," Dkt. 1, ¶ 242(b), there are no plausible allegations suggesting how WFG's vetting process "aggrieves" Wyndham. *See Stewart Agency*, 266 So. 3d at 213 ("[C]ausation under FDUTPA must be direct, rather than remote or speculative.") (citation omitted). And while Wyndham blames WFG for some unspecified owners allegedly submitting "false" Declarations in connection with

24

the Certified Exit – backed by Wyndham™ program, Dkt. 1, ¶¶ 136–37, there are no allegations that WFG knows about the alleged Declaration requirement, much less that it directs or advises the customer to sign these Declarations.

Further, as explained above, there is no deception imposed on WFG's customers because they know exactly how WFG may obtain a "cancellation" or "termination" *before* WFG performs any services for them. *See Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1367 (S.D. Fla. 2007) (finding a fee was "not unfair or deceptive because it was clearly disclosed at the time" of the transaction).  And beyond paraphrasing provisions of the Credit Repair Organization Act in conclusory fashion, Dkt. 1, ¶¶ 243–45, the Complaint contains zero factual allegations that WCR engages in any activity that could be construed as deceptive. Likewise, there are no allegations suggesting that WFG and WCR's alleged procedural violations of that statute has injured Wyndham. *Perta v. Nat'l Credit Care Corp.*, 2019 WL 4750098, at *4–5 (N.D. Ill. Sept. 30, 2019) (citing *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341–42 (2016)).

## CONCLUSION

Based on the foregoing, the Wesley Parties respectfully request this Court to dismiss Plaintiffs' Complaint in its entirety, with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the Wesley Parties conferred with Wyndham in a good faith effort to resolve this Motion on January 24, 2022, by telephone. Wyndham opposes this Motion and the requested relief.

Dated this 27th day of January, 2022.

**WINDERWEEDLE, HAINES, WARD & WOODMAN, P.A.**

*/s/ Mya M. Hatchette*
Mya M. Hatchette, Esquire
FL Bar No.: 380120
Primary Email: mhatchette@whww.com
Secondary Email: lmwillett@whww.com
Post Office Box 880
Winter Park, Florida 32789
Phone: (407) 423-4246/Fax: (407) 645-3728
*Counsel for the Wesley Parties*

**OF COUNSEL:**

Walter A. Dodgen
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street SW
Huntsville, Alabama 35801
Phone: (256) 551-0171
Fax: (256) 512-0119
tdodgen@maynardcooper.com

H. William Bloom
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue N, Suite 2400
Phone: (205) 254-1000
Fax: (205) 254-1999
wbloom@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2022, I electronically filed the foregoing through the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

*/s/ Mya M. Hatchette*
Mya Hatchette, Esq.